UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| BOBBY G. TREADWAY,<br><br>    **Plaintiff,**<br><br>v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF THE<br>SOCIAL SECURITY<br>ADMINISTRATION,<br><br>    **Defendant.** | CIVIL ACTION NO. 5:22-28-KKC<br><br><br>**OPINION AND ORDER** |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the parties' cross-motions for summary judgment. (DE 14, 16.) Plaintiff Bobby G. Treadway brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the denial of his claim for disability insurance. The Court, having reviewed the record, will deny Treadway's motion, grant the Acting Commissioner's motion, and affirm the Acting Commissioner's decision.

**I. Analysis**

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (citation and quotation marks omitted). To determine whether a claimant has a compensable disability under the Social Security Act (the "Act"), the ALJ applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps are:

1

> *Step 1:*  If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:*  If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:*  If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:*  If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:*  If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." § 404.1520(a)(4).  In the first four steps of the process, the claimant bears the burden of proof.  *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)).  If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile."  *Id.* (citation and quotation marks omitted); *see also* § 404.1520(g)(1).

In denying Treadway's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Act.  § 404.1520(a); *see, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Treadway has not engaged in substantial gainful activity since September 22, 2015.  (Administrative Record ("AR") at 26.)

At step two, the ALJ determined that Treadway suffers from the severe impairments of seizures, diabetes mellitus, spine degeneration, carpal tunnel syndrome, knee degeneration, left shoulder degeneration, obesity, hypertension, sleep apnea, depression, anxiety, conversion disorder with convulsions, and post-traumatic stress disorder ("PTSD"). (*Id.*)

At step three, the ALJ found that Treadway does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.* at 26-29.)

Before proceeding to step four, the ALJ determined that Treadway has the residual functional capacity ("RFC") to perform a range of "light" work that includes:

- Lifting or carrying more than 20 pounds occasionally
- Lifting or carrying more than 10 pounds frequently
- Standing, walking, or sitting for up to six hours out of an eight-hour workday
- Unlimited pushing or pulling up to the exertional limitations
- Unlimited balancing
- Occasional stooping, kneeling, crouching, crawling, or climbing of ramps or stairs
- Working in sound environments that are moderately loud
- Occasionally reaching overhead with the left, non-dominant upper extremity
- Frequent fingering or handling with the left, non-dominant upper extremity
- Performing simple, routine work

(*Id.* at 29-51.)

As for restrictions for "mental issues," the ALJ determined that Treadway could:

- Maintain attention, concentration, and pace for two-hour intervals as necessary to complete simple tasks
- Occasionally interact with coworkers or supervisors
- Occasionally have contact with the general public
- Occasionally experience changes in the work place setting

(*Id.*)

At step four, the ALJ determined that Treadway is unable to perform any past relevant work. (*Id.* at 51-52.)

At step five, the ALJ determined that, considering the RFC described above and Treadway's age, education, and work experience, there are jobs that exist in significant numbers in the national economy that he can perform, and thus, he is not disabled. (*Id.* at 52-53.)

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council subsequently denied Treadway's request for review. *See* 20 C.F.R. § 422.210(a). Treadway therefore has exhausted his administrative remedies and filed an appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

Treadway raises three different arguments to argue that the ALJ erred in finding that he was not disabled: (1) the ALJ "has failed to consider what is a disability;" (2) the ALJ's RFC determination regarding his physical limitations was flawed; and (3) the ALJ's RFC determination regarding his mental limitations was also flawed. (DE 14 at 1-2.)

**A.       The ALJ applied the correct definition of "disability."**

Treadway first argues that the ALJ "has failed to consider what is a disability" and states that a disability is "any condition of the body or mind / impairment that makes it more difficult for the person with the condition to do certain activities / activity limitation[s] and interact with the world around them / participation restrictions." (DE 14 at 1.) Treadway does not cite to any statute, regulation, or case law indicating that this is the proper definition of "disability" for purposes of assessing if a person has a disability under the Social Security Act. Instead, under the Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a person has a disability meeting this definition, ALJs engage in the five-step process described

4

above. *See Miller*, 811 F.3d at 834 n.6. And, as previously discussed, the ALJ here engaged in the five-step process to determine if Treadway was disabled. Therefore, the ALJ did not err in applying this definition of a disability.

**B.   The ALJ did not err in discounting medical opinions regarding Treadway's physical limitations.**

In determining his RFC, Treadway argues that the ALJ improperly discounted the opinions of Dr. Taufik Kassis, Torri Furman, and Christen Pate. (DE 14 at 1-2.)

In a joint medical opinion, Dr. Kassis signed off on the findings of Furman, an APRN. (AR at 1583.) The ALJ concluded that the opinion was "internally inconsistent." (*Id.* at 51.) The ALJ reasonably rejected the joint opinion because of conflicting findings within the RFC questionnaire completed by Dr. Kassis and Furman. Furman found that Treadway could not sit for more than 20 minutes at a time, and could not stand or walk for more than 15 minutes at a time. (AR at 1348.) However, in the same questionnaire, Furman found that Treadway could not sit, stand, or walk *at all* during an eight-hour workday. (*Id.*) Due to this inconsistency, the ALJ properly rejected the opinion of Dr. Kassis and Furman.

The ALJ also rejected the opinions of Furman, Dr. Kassis, and Pate because they were "not supported by the objective physical findings in the evidence." (AR at 51.) As explained, Dr. Kassis and Furman confusingly found that Treadway could not sit for more than 20 minutes at a time and that he could not stand or walk for more than 15 minutes at a time, while also finding that he could not sit, stand, or walk *at all* during an eight-hour workday. (*Id.* at 1348.) They further concluded that Treadway could frequently lift or carry less than 10 pounds but never lift more than 10 pounds. (*Id.* at 1349.) Furman and Dr. Kassis stated that Treadway would be "off task" for 80% of an 8-hour workday due to his impairments. (*Id.*

5

at 1350.) Pate, Treadway's physical therapist, stated that Treadway would be "off task" for 30% of the workday due to his impairments. (*Id.* at 1333.)

Substantial evidence within Treadway's objective medical records shows that his strength levels and his ability to stand, walk, and sit were not so limited. In January 2014, Treadway underwent an MRI, which showed that he had a herniated disc in his spine. (*See* AR at 1637-39.) Nonetheless, Dr. Charles M. Kenney III, the radiologist, found that his spine had "no evidence of fracture" with an "unremarkable appearance." (*Id.* at 1637, 2722.) Dr. Kenney also stated that Treadway's "vertebral alignment [was] normal." (*Id.*) While some limitations due to Treadway's herniated disc may be expected, he had spinal fusion surgery to repair the disc in May 2014. (*Id.* at 1643.) The results of the surgery were seemingly successful as "there [was] good bone fusion" and "[n]o significant nerve impingement" at the surgical site. (*Id.* at 1662.) During his post-operative examinations, Dr. Matthew Tutt, Treadway's neurosurgeon, noted that the "[s]urgical hardware [was] satisfactory placed," there was "[n]o evidence of loosening or infection," and Treadway's "[o]ther levels [were] normal." (*Id.* at 1651, 1655.) Months after his surgery, Dr. Tutt continued to find no evidence of "loosening of hardware" or signs of infection. (*Id.*) At a subsequent follow up appointment, Dr. Tutt observed that Treadway could move all of his extremities and maintained a "[n]ormal posture and gait." (*Id.* at 1661.) In September 2015, records show that Treadway's cervical spine strength was "Intact." (*Id.* at 1764, 2713.) The range of motion for Treadway's left shoulder was somewhat limited but was "Intact" for his right shoulder and his left wrist. (*Id.*) The grip strength for his left wrist was also "5/5." (*Id.*) A post-operative MRI showed that his spine had normal alignment with "normal signal and contour." (*Id.* at 1777.)

Because evidence showed that Treadway largely maintained movement and strength in his upper body and spine with only minor limitations in his range of motion and due to the

6

apparent success of Treadway's spinal surgery, the ALJ reasonably afforded little weight to the contrary findings of Dr. Kassis, Furman, and Pate. Therefore, the ALJ properly rejected their opinions and did not err in finding that Treadway had the RFC to perform a "light" range of work. (AR at 29, 50.)

**C.     The ALJ did not err in disregarding the medical opinion of Treadway's therapist and declining to deem him disabled based on his diagnoses alone.**

Next, Treadway appears to argue that the ALJ unreasonably disregarded the findings of Dr. Amy Taylor and records from Oliver Winston Behavioral Urgent Care in concluding that he had "no more than moderate" mental limitations in the ALJ's RFC analysis. (DE 14 at 2; AR at 51.)

Treadway first points to Dr. Taylor's initial assessment of him in October 2016, where she diagnosed him with conversion disorder with seizures and convulsions, and PTSD. (DE 14 at 2; AR at 2408.) Dr. Taylor later confirmed the diagnoses in a letter. (AR at 1757.) The ALJ did not disagree and found that he suffered from both conversion disorder and PTSD. (*Id.* at 26.) However, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). Without more, Treadway's diagnoses of conversion disorder and PTSD alone are insufficient to establish a disability.

The ALJ gave limited to weight to the opinions of Dr. Taylor, Treadway's therapist, because her opinions were not supported by "longitudinal evidence" showing that Treadway's mental limitations are no more than moderate and conflicted with more recent evidence showing that his mental health has improved over time. (AR at 51.) In February 2018, Dr. Taylor evaluated Treadway's ability to perform certain activities based on a scale that ranged from "Unlimited" to "Good" to "Fair" to "Poor." (*Id.* 1751.) "Fair" meant that his "[a]bility to function in this area is seriously limited but not precluded." (*Id.*) "Poor" meant that he had

7

"[n]o useful ability to function in this area." (*Id.*) Dr. Taylor found that his abilities to maintain emotional stability, function independently, and maintain attention and concentration were "Fair." (*Id.*) She further found that his ability to deal with the public was "Poor." (*Id.*)

Substantial evidence supports that, over time, limitations in Treadway's mental functioning have waned. Following Dr. Taylor's evaluation of him in February 2019, he reported that his "mood [was] much better" and "much more stable" during a follow up appointment at Oliver Winston Behavioral Urgent Care in August 2019. (AR at 2518.) He also stated that his anxiety, depression, and irritability "greatly decreased." (*Id.*) In September 2019, he was observed as being "alert" with an "appropriate affect and demeanor" and "good insight and judgement" (*Id.* at 2570.) A January 2020 psychiatric evaluation noted that Treadway's concentration and attention were "adequate." (*Id* at 2623.) In a follow up visit for his psychiatric medicine in March 2020, Treadway said that although he still experienced "mild anxiety," he was "feeling better." (*Id.* at 2626.) His concentration and social judgment were "[a]dequate." (*Id.* at 2627.) While Treadway stated that his anxiety had increased due to the pandemic, his depression had "improved" at the time of an additional follow up in May 2020. (*Id.* at 2629.) Yet again, his concentration and social judgment were evaluated as "[a]dequate." (*Id.* at 2630.)

Based on substantial evidence throughout Treadway's records, the mental limitations he experiences are, at most, moderate. In November 2015 and March 2016, state agency psychologists found that Treadway's "attention span and concentration [were] normal," and any difficulties that he experienced in concentration were only mild. (AR at 224, 240.) In contrast, Dr. Taylor found that Treadway's ability to maintain attention and concentration was "Fair," meaning his abilities were "seriously limited." (*Id.* at 1751.) Likewise, the state

8

psychologists found that Treadway's restrictions of activities of daily living were "[M]ild" (*id.* at 225, 240), but Dr. Taylor found that his ability to function independently was also "seriously limited" (*id.* at 1751). While Dr. Taylor concluded that Treadway's ability to deal with the public was "Poor" (*id.* at 1751), the psychologists found that his difficulties in maintaining social function was merely mild with no communicative limitations (*id.* at 225, 227, 240, 243). Dr. Taylor's own treatment notes, spanning from November 2016 through June 2020, consistently found that Treadway's behaviors and presentation were largely normal. (*See e.g., id.* at 1664, 1666, 1668, 1676, 1678, 1694, 1696, 1702, 1704, 1708, 1710, 1718, 1720, 1722, 1724, 1726, 1728, 2193, 2209, 2211, 2213, 2215, 2219, 2223, 2225, 2227, 2229, 2237, 2255, 2257, 2261, 2263, 2265, 2269, 2289, 2291, 2308, 2332, 2336, 2338, 2342, 2344, 2346, 2354, 2256, 2360, 2362, 2368, 2370, 2386, 2388, 2394, 2398, 2404, 2406, 2637, 2639, 2645.)

Considering Treadway's noted improvement since Dr. Taylor's evaluation of him and given the discrepancies between Dr. Taylor's assessment of his mental limitations and the findings from other psychologists, the ALJ properly discounted Dr. Taylor's opinion. Accordingly, the ALJ did not err on this ground.

Finally, Treadway relies upon records from Oliver Winston Behavioral Urgent Care that list his diagnoses as "Major depressive disorder, recurrent severe without psychotic features" and "Post-traumatic stress disorder, chronic." (DE 14 at 2; AR at 2515.) He also cites to records listing the medications he was prescribed because of these diagnoses. (AR at 2515, 2521, 2529.) Again, as explained *supra*, a "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill*, 560 F. App'x at 551. Treadway's diagnoses of depression and PTSD are not enough, standing by themselves, to establish a disability.

**D.     Treadway's Remaining Arguments**

All of Treadway's remaining arguments simply reference his other submissions to the ALJ and Appeals Council and presumably, the arguments contained within those submissions. (DE 14 at 2.) These arguments do not attempt to identify any errors in the ALJ's disability determination, which is the determination before the Court for review. Therefore, the Court will not consider these remaining arguments.

**II.     Conclusion**

For all these reasons, the Court **HEREBY ORDERS** that:

1. The plaintiff's motion for summary judgment (DE 14) is DENIED;

2. The defendant's motion for summary judgment (DE 16) is GRANTED;

3. The decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

This 29th day of August, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY